## COOLEY v. COOLEY.

1. PRACTICE—JUDGMENT.—WHERE an action on a judgment is consolidated with one to set aside certain devises, and the latter complaint is dismissed, the former should be retained, to give defendants relief against the judgment sued on.
2. FINDING OF FACT—BASTARD.—According to the positive evidence in the case, alleged illegitimate child found to have been born in wedlock.
3. EVIDENCE.—No rule of law excluding testimony of interested parties except in certain cases.

Before GARY, J., Greenville, December, 1899. Modified.

Action to set aside certain devises by Lewis J. Cooley *et al.* against Stacey Cooley *et al.* From judgment for defendants, plaintiffs appeal on following exceptions:

His Honor erred in reversing the report of the master upon the ground that the master erred in rejecting altogether the testimony of parties to the case and in relying upon the evidence of disinterested witnesses, and in holding in this connection that "Section 400 is express authority against rejecting a witness on account of interest except in certain cases therein mentioned." (a) It being respectfully submitted that no objection was raised to the competency of the testimony of said parties, and it was all admitted without ob-

jection, and "no person offered as a witness" was "excluded by reason of his interest in the event of the action." (Code, sec. 400.) (b) The law does not circumscribe or restrict the master in the exercise of his judgment in determining upon what witnesses he can "rely," and, therefore, in the exercise of his discretion in coming to his conclusion, he had the right to accept or reject any evidence in the case without committing error of law. (c) The Court erred in confusing the exclusion of the witness because of interest, under sec. 400, and the disregarding of the evidence when admitted for any reason which might appeal to the judgment and common sense of the master. (d) Because it is evident from the mere reading of the master's report that he had used the word "rejecting" in the sense of "disregarding." ·

His Honor erred in holding that "It seems to me that the testimony of these witnesses was competent, and the master should not have rejected it." (a) For it is here assumed that the master held said testimony to be incompetent, when in fact he did not do so, but admitted said testimony, there being no question made as to its competency, either before the master or before his Honor, the presiding Judge. (b) For the further reason that the master, when he came to weigh the testimony and form his conclusions, was free to follow his own best judgment as to what testimony should be "rejected" as lacking credibility, or he had the right to offset the testimony of one witness of equal credibility with that of another, thereby determining the weight of the evidence.

His Honor erred in concluding "that the master has based his conclusion as to the marriage of John and Stacey Cooley and the birth of Olliday upon irrelevant testimony, the same being hearsay," for it is respectfully submitted: (a) That it nowhere appears that the said master considered any testimony in the case which was incompetent. (b) That John J. Cooley's admissions, which the Circuit Judge held was clearly hearsay, upon the ground that they were declarations of a person not a party to the action and who had no interest in the subject matter, and was at that time dead, were compe-

tent as against those claiming through or under him.   (c)
The most material fact in the case being as to the time when
the said John J. Cooley was married to the defendant, Stacy
Cooley; it is respectfully submitted that the declarations of
the said John J. Cooley in his lifetime with reference thereto
were competent, and fell within the class of exceptions as to
the admissibility of hearsay evidence recognized by the au-
thorities.   (d) That the said testimony characterized as
hearsay, and especially the testimony of numerous witnesses
as to the admissions of John Cooley made after 1884 (when
defendants claim Olliday was born) to the effect that he and
Stacy were not married, was admitted without objection,
and, therefore, became competent, even if originally incom-
petent.   See testimony of Judson King, John T. Chapman,
David Jenkins, Jas. T. Campbell, Dr. Benson Harrison,
Hewlett Chapman, and others.

His Honor erred in holding that the testimony of Wm.
Davenport, in so far as he refers to it, was incompetent and
was not testimony on a question of pedigree; and in this con-
nection in holding that common repute was only admissible
in cases of pedigree.

His Honor erred in concluding as follows: "In view of the
fact that the said John and Stacy Cooley were legally mar-
ried, and had one child in lawful wedlock, I think the testi-
mony preponderates to establish the fact that Olliday was
born in legitimate wedlock," it being respectfully submitted:
(a) That the testimony shows that one child born in lawful
wedlock died in infancy.   (b) That the clear preponderance
of the testimony showed that Olliday was illegitimate.   (c)
That the testimony which the Circuit Judge in coming to his
conclusion disregarded as incompetent, was either (a) Com-
petent under the rule of evidence, or (b) Was admitted with-
out objection, and, therefore, became competent for the pur-
poses of this case; and with that testimony in the case, the
conclusions of the master were supported by the clear pre-
ponderance of the evidence.   (d) Admitting that defend-
ant's testimony that Olliday was born in 1884, is true, not

only is there "some" evidence, but there is a preponderance of evidence going to show that the marriage did not take place until after that time. (e) That even admitting that the said Olliday Cooley was not illegitimate, the devise to the other defendants admitted to be illegitimate, exceeded one-fourth of the real clear value of the property of said John J. Cooley, and entitled the plaintiffs to some recovery, and the Circuit Judge erred, therefore, in dismissing the complaint.

His Honor erred in not holding and adjudging that the findings of fact on the part of the master were based upon the clear preponderance of the testimony, that his conclusions of law were sound, and in, therefore, not sustaining the said report.

*Messrs. McCullough & Martin,* for appellants, cite: *Unlawful relationship being established, the law presumes its continuance until disproved by competent evidence:* 4 N. Y., 430. *Hearsay testimony is competent to prove births, &c.:* 3 Wall., 175; 26 S. C., 231; 37 S. C., 19. *If plaintiffs succeed, wife cannot recover anything:* 4 Strob. Eq., 91; Cheves, 41; 44 S. C., 428; 7 Cranch, 370. *Accepting under will, she forfeits dower:* 1 McC. Ch., 300; 37 S. C., 532; Cheves Eq., 37; 4 Strob. Eq., 84; 16 S. C., 625; 30 S. C., 249; Rev. Stat., 1898.

*Mr. B. M. Shuman,* contra, cites: *Gift to illegitimate only voidable:* 1 Rich. Eq., 466, 474; 2 Strob. Eq., 193; 3 Rich. Eq., 96. *No election here:* 2 Strob. L., 48; 2 McCord Ch., 229. *This action is personal and does not survive:* 1 Rich. Eq., 466, 474; 2 Strob. Eq., 174; *and is not assignable:* 20 S. C., 132.

July 11, 1900. The opinion of the Court was delivered by

MR. JUSTICE POPE. J. J. Cooley departed this life on the 13th day of December, 1896, leaving of force his last will and testament. Mr. Cooley's first wife died a short while before the war between the States, having borne him six

children, viz: James, Hiram, Lewis, William C., Charstey
King and Mary Hall—all of whom are now alive except
James, who died in the year 1879.   The said J. J. Cooley,
several years after his first wife's death, became infatuated
with Stacy Chastain, and so intimate were their relations
that she bore him seven children, namely: John T. Cooley,
Ella Alverson, Thomas O. Cooley, Esther Cothran, Sanford
Cooley, Anna Prudence Cooley, and Olliday Cooley.   All
of these children were confessedly born out of the bonds of
wedlock except Olliday Cooley.   The said J. J. Cooley pro-
vided for his putative children, John T. Cooley, Ella Alver-
son, Thomas O. Cooley and Esther Cothran, before his
death.   About the fall of the year 1883, it is alleged, the
said John T. Cooley married the said Stacy Chastain, and
she ever after lived with him as his dutiful wife, bearing
him a daughter, Olliday, in June, 1884.   The said John J.
Cooley conveyed to his wife a tract of land, containing 35
acres, which she returned for taxation in the year 1884 in
her newly wedded name of Stacy Cooley.   In the last will
and testament of John J. Cooley, he devised "unto his be-
loved wife, Stacy Cooley," his homestead lot of land, con-
taining 40 1-2 acres; to his putative son, Sanford Cooley, a
lot of land containing 31 1-2 acres; unto his putative
daughter, Anna Prudence Cooley, a lot of land containing
30 1-2 acres, and "unto my youngest daughter, Olliday Coo-
ley," a tract of land of 30 3-4 acres.   After the death of J.
J. Cooley, his legitimate children by his first wife (the plain-
tiffs here) brought an action against the putative children to
take from them the lands which had been conveyed to them
by J. J. Cooley in his lifetime, but in the action the defend-
ants triumphed over said plaintiffs.   So this action, now
pending, was brought by the four children named as plain-
tiffs (the said Charstey King having purchased all the es-
tate of her brother, Hiram Cooley, by which result it was
not necessary to make Hiram a party, only suggesting the
reason for his absence on the record, which was duly per-
formed), against Stacy Cooley, John T. Cooley, Thomas O.

Cooley, Sanford Cooley, Ella Alverson, Esther Cothran, Anna Prudence Cooley and Olliday Cooley, to set aside the devises in the will named and to have an account of the property of the estate by the executors, alleging as the ground to set aside the said devises, that they were a larger or greater proportion of the real clear value of J. J. Cooley's estate, real or personal, after payment of his debts, *than one-fourth part thereof,* and were, therefore, in violation of the statute law of this State, so far as the excess over the one-fourth part is concerned. The answer denied these things. It seems that while the son, James J. Cooley, was alive, he was alleged to have had assigned to him some judgment or judgments against his father, J. J. Cooley, and that after the death of the said James J. Cooley, his administrator, Lewis J. Cooley, as plaintiff, had brought an action against the executors of the last will of J. J. Cooley, deceased, to revive said judgment or judgments, and that the action was pending in the Court of Common Pleas against said executors during the year 1899. So that about July, 1899, the following agreement in writing was entered into touching said pending lawsuit: "Counsel agree that the question of the liability of the estate of J. J. Cooley, deceased, and the devises under his will, upon the judgment sued on in the case of Lewis J. Cooley, as administrator, *v.* John T. Cooley *et al.,* as executors, be determined in this action, all the necessary parties being before the Court, and that the said case on Calendar I, Common Pleas docket, be discontinued, and that the devisees and legatees be permitted to adopt the answer of the executors in that case in so far as it is applicable to their interest as of this date; case continued." The case at bar was referred to the master of Greenville County to hear and determine all the issues involved. By his report he found as a fact that J. J. Cooley and Stacy Chastain were married, but not until after the birth of the defendant, Olliday Cooley, thus making all the children borne by Stacy Chastain to J. J. Cooley born out of wedlock. Also that the net clear estate, real or personal, of J. J. Cooley, deceased, amounted

to $1,993, and that one-fourth thereof was $498.25; also, that the devise to Anna Prudence Cooley was worth $213.50; that to Sanford Cooley was worth $252, and that to Olliday Cooley was worth $300, aggregating $765.50—which would be $267.25, more than the one-fourth clear value of the estate of J. J. Cooley, deceased; and that by adding interest from the 13th December, 1896, to the date of the report, the $267.25 would amount to $314.61, for which last amount plaintiffs were entitled to judgment against the three devisees, Anna, Sanford and Olliday Cooley. The master also found that the judgment sued on in the case of Lewis J. Cooley, as administrator, *v.* John T. Cooley *et al.,* executors, is paid by lapse of time, and that the plaintiff is not entitled to recover anything thereon. There were no exceptions taken to the findings by the master, that J. J. Cooley had married Stacy Chastain; that the net value of J. J. Cooley's estate was $1,993; that the devises to Anna, Sanford and Olliday Cooley aggregated $765.50, of which Olliday's devise was worth $300; and that the judgment sued on in the case of Lewis J. Cooley, as administrator, *v.* John T. Cooley *et al.,* as executors, had been paid by lapse of time, and that plaintiff was not entitled to recover anything thereon; but exceptions were taken to the findings by the master of the illegitimacy of Olliday Cooley. When the Circuit Judge passed upon this exception, he found that the master was in error as to his finding touching the bastardy of Olliday Cooley—holding that the marriage of J. J. Cooley and Stacy Chastain took place in the fall of the year 1883, and that Olliday Cooley, as the issue of that marriage, was born in June, 1884. The Circuit Judge ordered the complaint to be dismissed. From this decree the plaintiffs have appealed. The reporter will set out in the report of the case these grounds of appeal. We may remark, at the outset, that we think that the Circuit Judge erred in dismissing the complaint, for it seems to us that the action ought to be retained in order that the Circuit Court may formulate a decree giving affirmative relief to

the defendants against the judgment sued on by Lewis Cooley, as administrator, which the master found was paid, and from which finding by the master no exception was taken.

It remains for us to consider plaintiffs' exceptions touching the alleged error of the Circuit Judge in holding Olliday Cooley a legitimate daughter of J. J. Cooley. It is apparent that if Olliday Cooley is held to be a legitimate daughter of J. J. Cooley, the devises to Anna Prudence and Sanford Cooley are not null and void under the statute law of our State (sec. 1999 of the Revised Statutes of this State, and cases of *Bradley* v. *Lowry,* Speer's Eq., 1; *Massey* v. *Wallace,* 32 S. C., 154; *Gore* v. *Clarke,* 37 S. C., 537; *Hull* v. *Hull,* 2 Strob. Eq., 188); for the whole net estate being only $1,993, of which $498.25 is the one-fourth part, and as the devises to Anna Prudence Cooley and Sanford Cooley amounted to $465.50—not the one-fourth part of the estate of the net estate of J. J. Cooley, deceased, was received by them. In disposing of the questions raised by the appellants, we will not undertake to dispose of them *seriatim;* but in the views we may suggest, a full and complete consideration of each exception is involved. Although the master found as a fact that J. J. Cooley and Stacy Chastain were husband and wife, he does not state, as a fact, the date of their marriage. It seems to us that if there was sufficient testimony before the master for him to determine that J. J. Cooley and Stacy Chastain were husband and wife, there ought to be found sufficient testimony to determine when the marriage itself was solemnized. Certain it is that there were four witnesses, who testified that they were present and witnessed the marriage ceremony performed by the Rev. Mr. Tribble, while he was pastor at Washington Church, and these witnesses say this occurred in the fall of 1883. That very intelligent witness for the plaintiffs, John T. Chapman, testified that in the fall of 1882 and up to the spring of 1883, he knew that these parties were not married, although they occupied a compromising attitude to each other. This witness threatened to

report these parties for the way in which they lived. Mrs. Stacy Cooley, as she afterwards became, was living at the time spoken of by the witness, Mr. Chapman, in what was known as the Pet Henry house, and not in the homestead of J. J. Cooley. This is exactly what all the defendants testify; none of them speak of Mrs. Stacy occupying the J. J. Cooley dwelling house until about the time the marriage occurred. Witnesses for the plaintiff, when they speak of the marriage of Stacy Chastain to J. J. Cooley, speak of "rumors in the neighborhood," "it was the understanding of the family that they were not married," or "it was the understanding of the family that Olliday Cooley was born in the Pet Henry house." Such testimony as this, when contrasted with the direct, explicit, circumstantial and natural testimony of Stacy Cooley, John T. Cooley, G. W. Vincent and W. T. Bruce, that this marriage occurred in the fall of 1883, in the family dwelling house of John J. Cooley, will not stand for a moment. And so, too, as to the birth of Olliday Cooley, several of the defendants' witnesses swear that she was born in the month of June, 1884. Nearly all of the witnesses who spoke of Olliday's age said she was fourteen or fifteen years, in 1899. If she was born in 1884—in June—she would have been fifteen years of age when the testimony was given. If she was only fourteen years old, she must have been born in 1885. When the witnesses speak from actual knowledge, the birth is alleged to have occurred in June, 1884. When, however, "the understanding in the family," or rumor is relied upon, it is quite easy to understand how the date is made to vary. We are not sure but that the very best antidote against reliance upon these "family understandings" and "local rumors," in establishing the date of the marriage or the date of a birth, when contrasted with direct testimony, would be furnished by the testimony in this cause. We are, like the Circuit Judge, unable to feel a doubt in this matter, so far as this testimony is concerned. So far as the first exception is concerned, it seems to us that it makes no difference whether we ascribe

error to the master in using the language that he found the
clear preponderance of the testimony in favor of the
3    contention of the plaintiff, that Olliday Cooley was
born out of lawful wedlock, "rejecting altogether the
testimony of disinterested witnesses," for an examination
of the testimony of the witnesses for the plaintiffs shows
that it was made up of "hearsay" in part, "rumor" in part,
and "family understandings" in part.   While the testimony
of the defendants was direct and positive.   Still, we must
hold that the master had no right to disregard testimony
simply because such testimony was given by parties to the
cause.   It is only in certain enumerated classes of cases that
testimony of this nature becomes incompetent.   In the case
at bar, it was competent.   The appellants are in error in
stating in subdivision (a) under the first ground of appeal,
that no objection was offered by the defendants to the intro-
duction of at least some of this testimony.   So far as (b) is
concerned, the law does not restrict the master in the exer-
cise of his judgment on determining upon what testimony
he can rely, but the law in its wisdom does lay its hand upon
a master who confessedly rejects direct testimony to facts
merely because the witnesses who detail such testimony hap-
pen to have some interest in the event of the suit. · The fore-
going disposes of "c" and "d."   So far as the second
ground of appeal is concerned, it does appear, as found by
the Circuit Judge, that the testimony of Mrs. Stacy Cooley,
John T. Cooley and others was competent, and the master
should not have rejected it.   This testimony should have
been placed in the scales when the master was determining
the preponderance of the testimony.   The number of wit-
nesses is not of the essence of belief, for one or two reliable
witnesses may outweigh the doubtful testimony of a dozen
witnesses.   This ground of appeal is dismissed.

So far as the third ground of appeal is concerned, as we
before remarked, there is no necessity to consider it, as it is
rendered unavailing because of the superior weight of the
direct testimony of defendants, and even if admitted, could

12—58

exercise no force certainly to overcome the positive and direct testimony of the defendants. This ground of appeal is dismissed.

So far as the fourth, fifth and sixth grounds of appeal are concerned, they become mere abstractions in the light of our holding as to the force and effect of the direct and positive testimony of the defendants. They are overruled.

It is the judgment of this Court, that the judgment of the Circuit Court should be so modified that the action shall be retained in order that the Circuit Court may formulate a judgment giving the defendants affirmative relief against the judgment sued upon by Lewis J. Cooley, as administrator; but that so much of said Circuit judgment as denies the plaintiffs any claim against the defendants growing out of the devises in the will of J. J. Cooley, deceased, be affirmed.